**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Case No. 26-cv-04028-NYW

MINH VO,

Petitioner,

v.

JUAN BALTAZAR, in his official capacity,
GEORGE VALDEZ, in his official capacity,
DAVID VENTURELLA, in his official capacity,[1]
MARKWAYNE MULLIN, in his official capacity, and
TODD BLANCHE, in his official capacity,

Respondents.

---

**MEMORANDUM OPINION AND ORDER**

---

This matter is before the Court on the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"). [Doc. 1]. Respondents filed a consolidated response, [Doc. 5], and Petitioner has not sought leave to file a reply. For the following reasons, the Petition is respectfully **GRANTED**.

## BACKGROUND

Petitioner Minh Vo ("Petitioner" or "Mr. Vo") is a citizen of Vietnam who entered the United States as a refugee in 1987 or 1988. [Doc. 1 at ¶ 27]. U.S Immigration and Customs Enforcement ("ICE") placed Mr. Vo in removal proceedings in 2015, and his order of removal became administratively final on September 25, 2015. [*Id.*; Doc. 1-6 at 2]. Mr. Vo alleges that he "was previously detained by ICE in 2015 and 2016, although

---

[1] David Venturella is automatically substituted for Todd Lyons as a Respondent in his official capacity pursuant to Federal Rule of Civil Procedure 25(d).

he cannot recall the exact dates." [Doc. 1 at ¶ 3]. He was apparently released sometime in 2016. On May 28, 2026, Mr. Vo was detained again, and he remains in custody at an immigration detention facility in this District. [*Id.* at ¶¶ 1, 12].

Mr. Vo brings two claims challenging his detention under the Due Process Clause of the Fifth Amendment and the Immigration and Nationality Act. [*Id.* at ¶¶ 41–50]. Both claims assert that his detention has become unreasonably prolonged under *Zadvydas v. Davis*, 533 U.S. 678 (2001). [*Id.*]. He asks the Court to order Respondents to immediately release him from custody. [*Id.* at 10].

## LEGAL STANDARD

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687–88).

## ANALYSIS

### I. Detention of Noncitizens

Generally, when a noncitizen is ordered removed from the United States, the removal "shall" occur within the next 90 days—the "removal period." 8 U.S.C. § 1231(a)(1); *Morales-Fernandez v. Immigr. & Naturalization Serv.*, 418 F.3d 1116, 1123 (10th Cir. 2005). Detention is mandatory during the removal period, 8 U.S.C.

§ 1231(a)(2)(A), but once the removal period expires, the noncitizen "*may*" be detained, *id.* § 1231(a)(6) (emphasis added). The Supreme Court has recognized that this permissive language "suggests discretion," but "does not necessarily suggest unlimited discretion." *Zadvydas*, 533 U.S. at 697. Indeed, "read in light of the Constitution's demands," Section 1231(a)(6) "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. In *Zadvydas*, the Court explained that

> [a] statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to "depriv[e]" any "person . . . of . . . liberty . . . without due process of law." Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects.

*Id.* at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Finding "nothing in the history of these statutes that clearly demonstrates a congressional intent to authorize indefinite, perhaps permanent, detention," the *Zadvydas* Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

The Court did recognize, however, a presumptively reasonable six-month detention period. *Id.* at 701. "After this 6-month period," if the noncitizen demonstrates "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* The Supreme Court explained that a six-month presumptive period does not mean that every noncitizen detained for six months must be released; rather, a noncitizen may remain in detention "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* But "if the government

fails to demonstrate a significant likelihood of removal in the reasonably foreseeable future, the noncitizen must be released." *Ahrach v. Baltazar*, No. 25-cv-03195-PAB, 2025 WL 3227529, at *2 (D. Colo. Nov. 19, 2025) (citing *Zadvydas*, 533 U.S. at 701).

**II. Petitioner's Detention**

Respondents do not dispute that the length of Petitioner's detention since the removal order exceeds the presumptively reasonable six-month period recognized in *Zadvydas*. *See* [Doc. 5]. Indeed, the Petition establishes that Mr. Vo was detained for at least three months in 2015 during the mandatory removal period and has been detained for more than three months in 2026. [Doc. 1 at ¶¶ 1, 3, 27]. The cumulative length of his detention therefore exceeds six months, and *Zadvydas's* burden-shifting framework applies. *See Saborit Aguilar v. Noem*, No. 25-cv-03463-NYW, 2025 WL 3514282, at *3 (D. Colo. Dec. 8, 2025) (this Court concluding that non-consecutive periods of detention should be "calculated cumulatively" for *Zadvydas* purposes).

Under *Zadvdas* Mr. Vo bears the burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. This standard does not require him to "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable." *Id.* at 702. Rather, he "simply must show that removal is not significantly likely in the reasonably foreseeable future." *Ahrach*, 2025 WL 3227529, at *3.

Mr. Vo argues that there is good reason to believe that there is no significant likelihood of removal in the future. He suggests that Vietnam is the only possible country to which he could be removed. But repatriation of Vietnamese refugees who arrived in the United States before 1995 has a fraught history. From 2008 to 2020, there was no

possibility of repatriation for pre-1995 arrivals. *See* [Doc. 1-3 at 5–6]. In 2020, the United States and Vietnam entered into a new Memorandum of Understanding ("MOU") that made repatriation possible but imposes specific eligibility requirements. [Doc. 1-4 at 2–3]. The MOU also prescribes factors for the United States and Vietnam to consider before agreeing to a repatriation and sets out certain procedures and documents required to obtain a travel document. *See* [*id.* at 3–5]. According to Mr. Vo, ICE did not rescind its "policy of generally finding that pre-1995 Vietnamese immigrants are not likely to be removed in the reasonably foreseeable future" until June 2025. [Doc. 1 at ¶ 9]. Mr. Vo says he has provided what he can to ICE to obtain a travel document, but no travel document has been issued. [*Id.* at ¶ 46]. There is no evidence that ICE has taken any steps toward facilitating his removal to Vietnam or any other country. It is unclear whether Mr. Vo is even eligible for repatriation under the MOU.

Respondents do not contest these assertions or argue that Petitioner has not met his initial burden under *Zadvydas*. *See* [Doc. 5]. Instead, they declined to "submit[] a opposition to the Petition detailing the facts and circumstances of this case." [*Id.* at 1–2]. The Court thus finds that Petitioner has met his burden by showing "the existence of either institutional barriers to repatriation or obstacles particular to his removal." *Dusabe v. Jones*, No. 24-cv-00464-SLP, 2024 WL 5465749, at *3 (W.D. Okla. Aug. 27, 2024), *recommendation adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025); s*ee also Castellano v. U.S. Dep't of Homeland Sec.*, No. 26-cv-00080-PAB, 2026 WL 472732, at *3 (D. Colo. Feb. 19, 2026) (finding that petitioner met his burden where respondents had not identified any country that would accept him and had made little progress in securing deportation). Mr. Vo has shown "good reason to believe that there is no significant

likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

The burden now shifts to Respondents to present sufficient evidence to show that removal is likely. *Id.* They make no effort to meet that burden and concede that the Court may "decide to grant the Petition and award appropriate relief." [Doc. 5 at 2]. This cursory response cannot justify Petitioner's ongoing detention. *See, e.g.*, *Zishan v. Warden, Torrance Cnty. Det. Ctr.*, No. 1:26-cv-02463-MIS-GBW, 2026 WL 2621081, at *2 (D.N.M. Sept. 4, 2025) (finding that similarly perfunctory response brief "constitute[d] a concession" of petitioner's claim that his detention violated *Zadvydas* and due process).

Accordingly, the Court concludes that Respondents' continued detention of Petitioner violates *Zadvydas* and his due process rights under the Fifth Amendment. *See Pena-Gil v. Lyons*, No. 25-cv-03268-PAB-NRN, 2025 WL 3268333, at *4 (D. Colo. Nov. 24, 2025). The Petition is **GRANTED**, and it is **ORDERED** that Petitioner be **RELEASED** from custody within **48 hours**. *See Ahrach*, 2025 WL 3227529, at *5 (granting release in similar circumstances); *Pena-Gil*, 2025 WL 3268333, at *5 (same).

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) The Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. 1] is **GRANTED**;

(2) Within **48 hours** of this Order, Respondents **SHALL RELEASE** Petition from custody; and

(3) On or before **September 25, 2026**, the Parties shall file a joint status report confirming that Petitioner was released.

DATED: September 21, 2026

BY THE COURT:

________________________________
Nina Y. Wang
United States District Judge